**Janet D. KRIZEK, Plaintiff–Appellant,**

v.

**CIGNA GROUP INSURANCE,**
**Defendant–Appellee.**

**Docket No. 02–9321.**

United States Court of Appeals,
Second Circuit.

Argued: Aug. 28, 2003.
Decided: Sept. 24, 2003.

Robert J. Clune, Williamson, Clune & Stevens, Ithaca, NY, for Plaintiff–Appellant Janet D. Krizek.

John Hanrahan (Kevin G. Horbatiuk, on the brief), Russo, Keane & Toner, LLP, New York, NY, for Defendant–Appellee CIGNA Group Insurance.

Before: WINTER, CALABRESI, KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

Plaintiff-appellant Janet Krizek suffers from a mysterious ailment, which has perplexed numerous doctors for several years. Despite undergoing a multitude of tests and medical evaluations, Krizek has been unable to find a definitive diagnosis for her condition. Krizek's symptoms have worsened through the years, causing severe pain, fatigue, and other problems and eventually forcing her to cease working. She brings the instant litigation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against defendant-appellee Insurance Company of North America ("INA"), sued as CIGNA Group Insurance. She challenges INA's determination that she was ineligible for benefits pursuant to a group long-term disability policy (the "Plan"), which INA issued to her former employer, Cornell University. After holding a bench trial and conducting a *de novo* review of the administrative record, the United States District Court for the Northern District of New York (Mordue, *J.*) concluded that Krizek is not entitled to long-term disability benefits because she is not "totally disabled" within the meaning of the Plan.

While we agree with the District Court's decision to restrict its review to the record before the plan administrator because of Krizek's failure to show "good cause" warranting an expansion of the record, we are troubled by several aspects of the court's decision. Despite professing to review only the administrative record, the District Court relied heavily on evidence that was not part of the administrative record. The court also committed three clear errors of fact in assessing Krizek's subjective complaints of pain. Because we are unable to determine the impact of these errors on the court's ruling, we vacate the judgment and remand on the merits and, if appropriate, on the issue of attorney's fees. See *infra* Section III.

BACKGROUND

## I. Krizek's Medical Problems

Krizek began working as a laboratory technician at Cornell in 1981. Over the course of her seventeen-year employment, Krizek's duties increased to the point where she managed a research laboratory, supervised graduate students, helped conduct experiments, conducted repeat experiments to confirm results, and performed various administrative duties in the laboratory. Krizek often worked overtime when the job required.

Beginning in 1991 or 1992, Krizek, at the time in her late 40s, began to experience fatigue and muscle aches. Krizek recalls that this fatigue and pain gradually became more severe and developed into more serious problems, including short-term memory loss, progressive hearing loss, impaired sense of taste and smell, sleeping difficulty, hypertension, and increased sensitivity to ultraviolet rays. Krizek claims that these problems significantly inter-fered with her ability to perform her job. For instance, her hearing difficulty inhibited her ability to talk on the phone, while her memory problems caused her to forget passwords, entry codes, and even people's name.

In the years that followed, Krizek visited numerous doctors and tried a multitude of medications, but few answers were found.[1] On April 8, 1998, Krizek's primary care physician, Dr. Alan T. Midura, concluded that she "should go on total disability at this point until her symptoms improve or a more definite working diagnosis can be established and treatment adjusted." Dr. Thomas Bunch of the Mayo Clinic also stated in his report that Krizek's condition "is interfering with her life and she can't work." Otherwise, Krizek's medical evaluations revealed minimal conclusive diagnoses as to the nature of her illness, the cause of her symptoms, or solutions for alleviating them. For instance, one physician speculated that Krizek may suffer from an "autoimmune disorder such as lupus or mixed connective tissue disease, or possibly sarcoid", while two doctors have suspected that she had Sjogren's syndrome, but no physician was able to say with any certainty. CAT scans, MRIs, and other physical and neurological examinations likewise failed to indicate any enlightening abnormalities. Krizek's attempts at physical therapy only made her pain worse, and pain medications did little to relieve the pain.

On September 14, 1998, Krizek applied for Social Security benefits and, on February 7, 1999, the Social Security Administration adjudged Krizek disabled as of April 8, 1998. Accordingly, Krizek was awarded $3,346.00 to cover the applicable

---

1. It is unnecessary for the purposes of today's opinion to recite exhaustively Krizek's medi-cal evaluations.

preceding period and $842.00 per month for the future.

## II. INA's Denial of Total Disability Benefits

Krizek's claim for total disability benefits was based upon the Plan's total disability provision, which states "[a]n Employee will be considered Totally Disabled if because of Injury or Sickness, he is unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience." The Plan further defines "Disabilities Considered To Result from Sickness" as those disabilities which result "directly or indirectly from Sickness or infection, except an infection resulting from an accidental cut or wound" or are "caused by hernia or injuries resulting in hernia."

INA referred Krizek to the Healthsouth Rehabilitation Center for a one-day Functional Capacity Examination ("FCE") conducted on October 12, 1998. The FCE concluded that Krizek is capable of working at a light level for a four— to five-hour day and at a sedentary level for an eight-hour day. On December 11, 1998, Regain Disability Management Services performed a Transferable Skills Analysis, which identified various alternative occupations for Krizek in light of the FCE and Krizek's educational background, work history, training, and medical restrictions.

In a letter dated January 19, 1999, INA denied Krizek's claim, explaining "that the medical information contained in [Krizek's] file does not support an impairment which causes Total Disability as defined [in the Plan]." The letter relied upon the results of the FCE, which concluded that Krizek was "capable of working in a sedentary work demand level per the Dictionary of Occupational Titles for an eight (8) hour day." The letter also conveyed the list of alternative occupations identified in the Transferable Skills Analysis.

Krizek appealed this denial on March 1, 1999. Her appeal consisted of a detailed letter, which she claims was written with her husband's assistance, reviewing the extensive history of her illness and explaining why her disability precludes alternative occupations. Attached to this appeal were letters from family members, her former employer, and other individuals further explaining Krizek's deteriorating physical condition, as well as the Social Security Administration letter finding her to be disabled within the meaning of its rules.

INA rejected Krizek's appeal on May 10, 1999. The rejection letter emphasized the absence of objective medical evidence demonstrating cognitive dysfunction or physical incapability. INA further explained that Krizek's own observations and the letters from her friends, co-workers, and her family members "can be construed as subjective in nature and therefore do not balance out the objective medical findings."

## III. Proceedings Before the District Court

On October 12, 1999, Krizek filed a complaint in New York Supreme Court, Tompkins County, seeking payment of all benefits accrued and unpaid, an order designating Krizek as an eligible participant under the Plan qualifying her for benefits as they become due, and her attorney's fees. On November 10, 1999, the defendant filed a Notice of Removal, which resulted in transfer to the United States District Court for the Northern District of New York.

The District Court held a bench trial on September 26, 2001, during which the

parties were permitted to introduce evidence outside the administrative record. In a decision dated September 26, 2002, the District Court ruled in favor of the defendant. Despite its admission at trial of evidence outside the record, the court limited its review to the administrative record because of Krizek's failure to establish any of the conditions necessary to expand its review. The court noted, however, that even if it were to consider the expanded record, its conclusion would be the same. In conducting its *de novo* review, the court refused to give heightened weight to the determination by Dr. Midura, Krizek's primary care physician, that she was totally disabled and to the Social Security Administration's finding that Krizek was disabled. The court then considered the objective evidence of Krizek's disability, observing that "[t]he medical evidence in the record contains little objective evidence regarding her disability, and almost uniformly indicates that the examinations and diagnostic testing of plaintiff yielded essentially normal or unremarkable results." The court also relied on the FCE, which concluded that Krizek should be able to work at the light level for four to five hours per day or at the sedentary level for eight hours per day. After concluding that "the objective medical findings do not warrant a determination that plaintiff is unable to perform the essential duties of any occupation," the court turned to Krizek's subjective complaints. The court ultimately decided not to credit Krizek's complaints regarding her pain, fatigue, and other symptoms, explaining that her subjective claims were belied by her work with the Special Olympics, her preparation of a detailed appeal of INA's denial of benefits, and her competence on direct and cross examination at trial.

## DISCUSSION

### I. Evidence Outside Administrative Record

Krizek argues that the District Court erred in limiting its review to the record before the claims administrator. Although the court admitted at trial evidence that was not before the administrator, the court did not consider this additional evidence in reaching its decision. Krizek maintains that the court instead should have expanded its review to consider this evidence because the plan administrator operated under a conflict of interest. Krizek argues that, because INA, the underwriting company, is a subsidiary of CIGNA, the entity determining eligibility for benefits was also the company that would have ultimately paid those benefits.

■■■■ A district judge may expand its review of an administrative decision beyond the record in front of the claims administrator upon finding "good cause" warranting the introduction of additional evidence. *Zervos v. Verizon, N.Y., Inc.,* 277 F.3d 635, 646 (2d Cir.2002). A "demonstrated conflict of interest in the administrative reviewing body" can constitute "good cause." *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.,* 112 F.3d 61, 67 (2d Cir.1997). The decision whether to consider evidence beyond the administrative record lies in the discretion of the district court and is not disturbed absent an abuse of that discretion. *See Muller v. First Unum Ins. Co.,* 341 F.3d 119, 125, 2003 WL 21961158, at *5 (2d Cir. Aug.18, 2003).

■■■■ Our case law requires a "*demonstrated* conflict of interest," *DeFelice,* 112 F.3d at 67 (emphasis added), which places an affirmative burden on the plaintiff to establish that the plan administrator was sufficiently conflicted so as to expand the

administrative record.[2] As conceded by appellant counsel at oral argument, however, the issue of conflict was never raised before the District Court. Indeed, the court expressly based its decision not to expand the record on this failure to produce evidence establishing a conflicted administrator, concluding that "plaintiff has introduced no evidence demonstrating this alleged conflict, nor has plaintiff made any specific argument, or indicated where, if anywhere, in the Administrative Record, this conflict of interest is illustrated. Accordingly, the Court has no basis upon which to assess whether a conflict of interests exists." We agree with this conclusion. Krizek's failure to offer evidence showing a conflict, and even to argue that a conflict existed, precluded expansion of the court's review on conflict grounds. Krizek suggests that INA conceded the existence of a conflict by not objecting to the admission of additional evidence beyond the record. INA's failure to object, however, did not relieve Krizek of her affirmative burden to demonstrate a conflict.[3] Because there was no basis for expanding its review on conflict of interest grounds, the District Court did not abuse its discretion by limiting its review to the administrative record.[4]

## II. District Court's Ruling on the Merits

■ Where an ERISA plan does not accord an administrator discretion in determining a participant's eligibility to benefits, a district court reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 245 (2d Cir.1999). Neither party takes issue with the District Court's determination that the Plan does not grant the administrator such discretion, nor with the court's attendant application of *de novo* review to the administrator's denial of total disability benefits. Judicial review of a plan administrator's determination is confined to the administrative record unless, as discussed earlier, "good cause" justifies expanding the rec-

2. District courts have emphasized a plaintiff's burden to allege facts, with sufficient specificity, that would support the existence of "good cause" permitting the admission of additional evidence beyond the administrative record. *See, e.g., Hotaling v. Teachers Ins. Annuity Ass'n of Am.*, 62 F.Supp.2d 731, 738 (N.D.N.Y.1999) (finding no conflict of interest where plaintiff "fail[ed] to allege, with any specificity, whether 'good cause' exists sufficient to permit the introduction of additional evidence" and commenting that a court should not exercise its discretion to expand the record "in cases where a party fails to demonstrate, beyond mere speculation or conjecture, that the 'administrative record is inadequate'" (citing *DeFelice*, 112 F.3d at 65)); *see also Sheehan v. Metropolitan Life Ins. Co.*, 2002 WL 1424592, at * 4 (S.D.N.Y. June 28, 2002) (noting that a plaintiff must demonstrate a conflict of interest or other good cause to present evidence outside the administrative record and therefore conclud-

ing that a proper subject for discovery was whether the plan administrator was conflicted when it terminated the plaintiff's benefits).

3. We note, however, that it is somewhat understandable why Krizek was under the impression that the District Court was going to consider evidence outside the administrative record. The court permitted the parties to introduce evidence at trial that was not before the plan administrator and appeared to give no indication that it ultimately would not consider that evidence. A more prudent and judicially efficient approach would be for district courts to resolve the conflict issue in advance and, only upon finding "good cause," permit the parties to introduce evidence beyond the administrative record.

4. We do not decide today whether the conflict alleged on appeal by Krizek would constitute "good cause" to expand the record if it had been argued below.

ord. *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 134–35 (2d Cir.2001).

 We review *de novo* a district court's conclusions of law and mixed questions of law and fact. *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir.1997). A court's factual findings, including those based on documentary evidence, are reviewed for clear error. *See* Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *accord Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Clearly erroneous review extends to a court's factual findings based on inferences drawn from other facts, *Leyda v. Allied-Signal*, 322 F.3d 199, 208 (2d Cir.2003), as well as factual findings based on documentary evidence, *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504; *Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 421 (2d Cir.1998).

The administrative record contained both objective and subjective evidence concerning Krizek's disability. The objective evidence consisted of reports prepared by the legion of physicians who have examined Krizek in recent years, as well as results from examinations such as the FCE. The subjective evidence included Krizek's explanation of her condition and supporting letters from her past employer at Cornell, family members, colleagues with the Special Olympics, and a friend, attesting to Krizek's descent into disabili-

ty. For reasons that follow, we conclude that the District Court made one error of law and three clear errors of fact in evaluating this subjective evidence.

### A. Consideration of evidence outside administrative record

As we concluded above, the District Court did not abuse its discretion in confining its review to the record before the plan administrator. Indeed, expanding the record would have been inappropriate in this case because Krizek made no showing of "good cause." *See DeFelice*, 112 F.3d at 66 (stating that a district court's discretion to admit additional evidence beyond the administrative record "ought not to be exercised in the absence of good cause").

 Despite its claim to the contrary, the District Court expressly considered evidence that was not before the plan administrator in arriving at its holding. The court cited as "evidence which indicates that plaintiff's condition is not totally disabling" the fact that Krizek "testified for nearly an hour during the trial of this matter; she was articulate, was able to recall with specificity the events leading up to and surrounding this case, was poised on cross-examination revealing no mental distress, was able to answer questions and follow directions, and could read documentary evidence." The court later reasoned that it "cannot over look [sic] the fact that plaintiff ... revealed no physical distress whatsoever during her testimony before the Court." Obviously, the administrative record did not contain any evidence pertaining to Krizek's subsequent demeanor and performance while testifying at trial.[5]

---

5. Even if Krizek's trial demeanor were properly before the District Court, we would have problems with the court's conclusion that her mere ability to testify coherently made her complaints less credible. While a court is well-equipped assess a witness's believability, this was not a credibility judgment, but rather a medical judgment. Such medical determinations are beyond the realm of a court's expertise. Moreover, the District Court did

Nor are we convinced that this evidence was inconsequential to the District Court's analysis. By the court's own admission, the court was not able to "over look [sic]" Krizek's ability to testify competently at trial when it rejected her subjective complaints.

### B. Krizek's work with the Special Olympics

■ Among the evidence which the District Court concluded "indicates that plaintiff's condition is not totally disabling" was Krizek's ability "to attend and chair regular Special Olympics committee meetings." The court similarly rejected Krizek's subjective claim that she would be incapable of performing the essential duties of any other occupation because of her pain and fatigue because, *inter alia,* "at the time of the appeal, she was the Special Olympics 'Area Coordinator,' able to attend and chair regular Special Olympics meetings." Krizek's ability to perform these roles, the court suggested, undercut her claim regarding the severity of her pain, fatigue, and other symptoms.

■ The District Court's decision not to credit Krizek's pain complaints in part because of her work with the Special Olympics is a factual inference, which we review for clear error. Our deferential clear error review of a district court's factual findings does not entitle us to second guess a district court's choice between permissible inferences to be drawn from the evidence. *Ceraso v. Motiva Enterprises, LLC,* 326 F.3d 303, 316 (2d Cir.2003); *Leyda,* 322 F.3d at 208; *Cifra v. G.E. Co.,* 252 F.3d 205, 213 (2d Cir.2001). Still, the court may only draw permissible inferences, which requires at a minimum some evidentiary basis in the record to support the inference.

The record before the court is simply devoid of any basis for the court's conclusion that Krizek's volunteer work with the Special Olympics undermined the credibility of her pain complaints. There was no evidence showing that her duties with the Special Olympics were at all tantamount to "perform[ing] all the essential duties of any occupation for which [Krizek] is or may reasonably become qualified," within the meaning of the Plan's definition of total disability. Nor was there any evidence showing that Krizek was able to perform these duties without the aid of pain medication.

In fact, the only evidence properly before the court with respect to Krizek's work with the Special Olympics lends support to Krizek's claim. Krizek's husband submitted a letter in support of her administrative appeal, which explained:

> [Krizek] continues to do volunteer work with Special Olympics. This is a very good job for her because she can work at home whenever she feels up to it and at the pace she can tolerate. She can spend 2 minutes at the computer or 5 minutes at a session. I have to read over her material and make corrections with some of her unintelligible sentences at times. She reads over her work herself and in her mind it is OK but at times it is just gibberish. There isn't any pressure to produce and the work she does is a very worthwhile needed cause.... When she has to go to the monthly committee meeting, or at other times when she knows that she has to be able to function, she will take some pain pills, Percocet.

In addition, Bruce and Nancy Robbins, who also work with the Special Olympics Committee, similarly explained in a letter

not know if Krizek's ability to testify was due to pain-killers or other medication, the effec-

tiveness of which may decrease dramatically within a limited period.

attached to Krizek's administrative appeal: "For the last year or more, we have noticed [Krizek] fatiguing quite easily. She is no longer able to join in coaching our cycling team. During committee meetings that Janet chairs over, she tires easily." If anything, these statements indicate that Krizek's work with the Special Olympics hardly resembles a full-time occupation, that her performance has been suffering considerably as a result of her medical condition, and that she cannot attend meetings without the aid of pain medication.

Accordingly, the District Court's conclusions that Krizek's work with the Special Olympics "indicates that plaintiff's condition is not totally disabling" and contradicts her claim that she cannot perform the essential duties of other occupations were impermissible inferences from the facts and clearly erroneous.

### C. Krizek's ability to prepare her administrative appeal

■ For similar reasons, we conclude that the District Court clearly erred in finding that Krizek's ability to "participate in the preparation and writing of a lengthy and comprehensive appeal of INA's denial of long term disability benefits" discredited her complaints of pain. Here too, the District Court lacked any basis for drawing this factual inference. While it is true that Krizek submitted a rather comprehensive appeal, there is simply no evidence with regard to Krizek's preparation of that appeal to support the District Court's inference. To the contrary, Krizek explained in the opening paragraph of her appeal,

This appeal has taken me several weeks to complete and was organized, researched, finalized and word processed by my husband utilizing my notes and personal journal. It seems I no longer

have the organizational skills or stamina needed for a project such as this. While preparing this appeal I had a very difficult time staying focused on a particular area and could not sit at the computer for more than a few minutes at a time. I would often write down my thoughts, go back and make corrections, and show it to my husband, just to have him ask what I meant by this gibberish?

While the District Court of course was not compelled to accept this recitation, this paragraph was the lone evidence the court had before it regarding how Krizek drafted her appeal. The court therefore lacked any basis for concluding that Krizek's preparation of her appeal papers demonstrated that she was not totally disabled.

### D. Physicians finding Krizek's symptoms disabling

■ The District Court commented that the administrative record "contains nothing from any of the plaintiff's physicians, except Dr. Midura, which indicates whether her physicians believe plaintiff's symptoms are disabling." This summary is incorrect. Dr. Thomas Bunch, a physician at the Mayo Clinic who examined Krizek in June 1998, stated in his report that Krizek "is tired all the time and this has been going on long enough that it is interfering with her life and she can't work." The court's statement that no physician other than Dr. Midura "believe[s] plaintiff's symptoms are disabling" cannot be reconciled with Dr. Bunch's explicit statement that Krizek "can't work."

### E. Conclusion

■ The errors discussed above all pertain to the District Court's rejection of Krizek's subjective complaints regarding her pain. As we recently explained in *Connors*, while a district judge is not required to accept a plaintiff's subjective

complaints as credible, "it cannot dismiss complaints of pain as legally insufficient evidence of disability." 272 F.3d at 136; *see Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) ("[T]he subjective evidence of appellant's pain, based on her own testimony and the medical reports of examining physicians, is more than ample to establish her disability, if believed."). Because, if found credible, Krizek's subjective complaints could have been legally sufficient evidence of disability, we are unable to determine whether, absent these four errors, the District Court still would have granted judgment for INA. We therefore vacate and remand for further proceedings.[6] *See Connors,* 272 F.3d at 134–37 (vacating district court's denial of disability benefits and remanding where court made two clear errors of fact and one error of law).

## III. Attorney's Fees

Krizek also requests that, on remand, the District Court award her attorney's fees incurred in her attempt to recover long-term disability benefits.[7] Krizek's pursuit of attorney's fees rests primarily on the alleged disorganized condition of the administrative record prepared by INA, which she describes as "a nightmare." Krizek conjectures that it would have been "a modest task" for INA to arrange the record chronologically and without duplication. According to Krizek, an award of attorney's fees is necessary to "deter others from this total disregard of organization."

■■■■ In an ERISA action, "the court in its discretion may allow a reason-able attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We identified the appropriate standard for determining whether to award attorney's fees in *Chambless v. Masters, Mates & Pilots Pension Plan*:

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants. 815 F.2d 869 (2d Cir.1987)

*Id.* at 871; *accord Lauder v. First Unum Life Ins. Co.,* 284 F.3d 375, 383 (2d Cir. 2002). We instructed in *Chambless* that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." 815 F.2d at 872. Even though the decision to award attorney's fees is committed to the discretion of a district court, we require that "we be informed by the record of why the district court acted as it did." *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 138–39 (2d Cir.2000) (internal quotation omitted).

Quite understandably, the District Court did not address Krizek's entitlement to attorney's fees because it ruled against her on the merits. If, on remand, the District Court grants judgment in favor of Krizek, it also should make specific findings with respect to whether attorney's fees are jus-

---

**6.** Krizek urges us to reverse the District Court's ruling, instead of vacating and remanding for further proceedings. The current record on appeal does not allow us to grant this remedy. While Krizek may ultimately prevail in this action, we cannot conclude, based on the lower court's factual find-ings that were not clearly erroneous, that the weight of the evidence compels judgment in her favor.

**7.** Appellee counsel represented at oral argument that it was not pursuing attorney's fees against Krizek.

tified in light of the factors enunciated in *Chambless. See Connors*, 272 F.3d at 137 (vacating district court's decision regarding benefit eligibility and remanding for findings on attorney's fees).

### CONCLUSION

After considering all the arguments raised by the parties, we vacate and remand the judgment of the District Court.